TOWN OF MCMINNVILLE *v.* CURTIS *et al.*

(*Nashville,* December Term, 1945.)

Opinion filed March 2, 1946.

C. E. Haston, of McMinnville, for Town of McMinnville.

Frank Davenport, of McMinnville, for Curtis.

Mr. Special Justice Tomlinson delivered the opinion of the Court.*

Chapter 602 of the Private Acts of 1945 provides that payment of a poll tax as a prerequisite for voting in any municipal election in the Town of McMinnville shall not be required.

The question for determination is whether this private act violates the provisions of the first clause of Article

*Hon Pride Tomlinson of the Columbia Bar sat as Special Justice in place of Mr. Chief Justice Green.

XI, Section 8 of our Constitution, in view of the fact that under the general law carried in our Code, Section 2027 et seq., it is required that every otherwise qualified voter in this state shall, as a condition precedent to the exercise of voting in any general or special election, including municipal elections, Section 2029, have paid the poll tax assessed against such otherwise qualified voter for the year preceding such election.

 We are of the opinion that this act violates in two particulars the first clause of Article XI, Section 8 of the Constitution.

(1) While this act does affect McMinnville as a political or governmental agency as distinguished from its private or corporate status, nevertheless, it is apparent upon its face that this act is designed primarily to affect citizens of McMinnville as individuals by extending to them a right or privilege expressly withheld by the general law from the citizens of every other municipality of the state, in that it requires that the citizens of McMinnville, otherwise qualified to vote in its municipal elections, be permitted to do so without the payment of this poll tax, while the general law expressly withholds this right or privilege from all such citizens of all other municipalities of the state. No reason appears, or is conceived, as to why this particular class (McMinnville citizens) should alone be the recipient of the privilege withheld from the citizens of all other municipalities. This Court in *State* v. *Nashville, C. & St. L. R. Co.,* 124 Tenn. 1, 11, 135 S. W. 773, 775, Ann. Cas. 1912D, 805, reiterated the often declared rule that "if the classification is made under article 11, section 8, of the Constitution, for the purpose of conferring some special right, privilege, immunity, or exemption, there must be some good and valid

reason why that particular class should alone be the recipient of the benefit."

In the case of *State ex rel. Scandlyn* v. *Trotter*, 153 Tenn. 30, 37, 281 S. W. 925, 927, this Court said "it is sometimes difficult to draw the line of demarcation between acts dealing with counties and cities in their governmental or political capacity, and acts affecting the citizens in their private rights. Not every act purporting to empower, or restrict, counties and cities with respect to given matters, falls strictly within the first described class, as to which the legislation may, under our authorities, be special. In many of such cases, upon analysis it is apparent that the effect of the legislation is to affect private persons or corporations in their personal or property rights, so as to confer privileges or place burdens upon those individuals residing within the local limits defined by the special legislation. Illustrations are to be found in a number of our reported cases. In such cases it is held that the legislation violates the pertinent sections of our Constitution."

This line of demarcation was further defined by this Court in the case of *State ex rel. Bales* v. *Hamilton County*, 170 Tenn. 371, 374, 95 S. W. (2d) 618, 619, wherein the Court held: "True, education is a governmental function. . . . And in the exercise of this function the county acts in a governmental capacity. A distinction is to be drawn, however, between legislation primarily designed to affect the governmental agency as such and legislation designed primarily to affect the employees or citizens of such governmental agency as individuals."

As stated in that case, this Court has uniformly stricken down acts enacted solely for the purpose of extending a particular benefit, right or privilege to the individuals of

one county, while that benefit, right or privilege is expressly withheld by the general law from the individuals of all other counties in the same classification. This rule necessarily applies to citizens of municipalities as well as counties. *State ex rel. Smith* v. *City of Chattanooga,* 176 Tenn. 642, 644, 144 S. W. (2d) 1096. The rule is stated in *Stratton Claimants* v. *Morris, Claimants,* 89 Tenn. 497, 534, 15 S. W. 87, 95, 12 L. R. A. 70, in this language: "If the classification is made under article 11, section 8, of the constitution, for the purpose of conferring upon a class the benefit of some special right, privilege, immunity, or exemption, there must be some good and valid reason why that particular class should alone be the recipient of the benefit."

Since, in our opinion, the primary purpose of the act in question is to confer—arbitrarily—upon the citizens of McMinnville, rights, benefits and privileges withheld by the general law from the citizens of all other municipalities, it must, under the above referred to clause of the Constitution, and upon the principle stated in the cases above cited, be declared void, notwithstanding the fact that the act does purport to affect McMinnville as a governmental agency.

(2) We are further of the opinion that should it be considered or assumed that the act is designed primarily to affect McMinnville as a governmental agency, rather than being primarily designed to confer a special privilege upon its citizens, still the act must be held in violation of the Constitutional provision mentioned.

It is, of course, settled law that special legislation affecting particular counties or municipalities in their governmental or political capacities may be enacted without violating Article XI, Section 8 of the Constitution. *Knoxville, City of,* v. *State ex rel. Hayward,* 175 Tenn. 159,

167, 133 S. W. (2d) 465. Many such acts had been upheld by this Court. But in those cases the special act either was not in conflict with the provisions of the general law, or the classification was upon a reasonable basis. This is not true as to the act under consideration. The provisions of this act are in sharp and direct conflict with the provisions of the general law. No reason is apparent, or is conceived, as to why the payment of a poll tax shall not be required as a condition precedent to voting in the municipal elections of McMinnville, when it is mandatory that such payment shall be made as a condition precedent to voting in elections of all other municipalities of the State.

In the case of *Berry* v. *Hayes,* 160 Tenn. 577, 28 S. W. (2d) 50, a special act contravening the general law forbade the State Highway Commissioner from imposing rights of way expenses on Williamson County. This Court, in holding this special act unconstitutional, said: "It is clear that this act is within the prohibition of Section 8, art. 11, in that it suspends a general law and grants immunities and exemptions to Williamson county which no other county may enjoy. It is arbitrary class legislation for which no possible justification can be conceived. There is no reasonable ground for granting an immunity to Williamson county which does not apply to every other county alike." At page 579 of 160 Tenn., at page 50 of 28 S. W. (2d).

In *State ex rel. Bales* v. *Hamilton County,* 170 Tenn. 371, 375, 95 S. W. (2d) 618, 619, this Court, in striking down a special act in conflict with the general law, said: "The act before us requires Hamilton county to pay its teachers a minimum wage, regardless of the condition of the county's treasury. It deprives the county of the right to contract according to its ability, imposing a bur-

den on Hamilton county placed on no other county in the state—all in conflict with the general school law—and the act must accordingly fall."

In *State ex rel. Smith* v. *City of Chattanooga*, 176 Tenn. 642, 144 S. W. (2d) 1096, the Court held in violation of Article XI, Section 8 of the Constitution a special act which required Chattanooga to pay its public school teachers salaries above the minimum required by the general law, to which general law the public school teachers of Chattanooga were subject. The Courts in that case said: "The involved Constitutional provisions apply to municipalities as well as to counties." At page 644 of 176 Tenn., at page 1097 of 144 S. W. (2d).

In the case of *Clark* v. *Vaughn*, 177 Tenn. 76, 146 S. W. (2d) 351, a special act providing for a special board of election commissioners for the city of Athens, Tennessee, and being an Act in conflict with the general law applicable to all other municipalities, was held unconstitutional because of its conflict with the general law, there being no sound reason or basis for the attempted discrimination.

These cases are not in the slightest in conflict with the well settled law that the legislature may constitutionally enact a special act affecting one particular county or municipality alone in its political or governmental capacity, provided such special act is not contrary to the provisions of a general law, applicable to all the counties or municipalitites. In the latter event, the discrimination must be upon a reasonable basis. Otherwise, it is void. This distinction was emphasized by this Court in the *State ex rel. Bales* v. *Hamilton County Case, supra.* It was there urged upon this Court that in *State ex rel. Bise* v. *Knox County*, 154 Tenn. 483, 290 S. W. 405, 50 A. L. R. 1158, and in *Smiddy* v. *City of Memphis*, 140

Tenn. 97, 203 S. W. 512, this Court had sustained special acts affecting alone Knox County and the City of Memphis, respectively, in their respective governmental capacities, and that these two cases were authority for sustaining the special act in *State ex rel. Bales* v. *Hamilton County*. This Court in response to that insistence said: "It is sufficient to say of these cases (*Bise* v. *Knox County*, and *Smiddy* v. *Memphis*) that neither of the special acts therein dealt with *ran counter to any general law of the state*." (Emphasis ours) But, in the instant case, the special act in question (McMinnville Act) does run counter to the general law of the State.

We are entirely unable to distinguish any of these cases hereinabove referred to, and many others which might be cited, from the instant case. Nor do we find any decision of this Court which supports the contention that the challenged act is valid. It is true that municipalities are the creatures of the legislature. Assuming that they singly or collectively may be utterly destroyed at its mere whim, yet, if the legislature elected to create municipalities throughout the State and permits their respective existence to continue, and elects to enact some general law mandatorily applicable alike to them all, then, Article XI, Section 8 of the Constitution prohibits the legislature from extending a special privilege or imposing a special burden upon one contrary to the general law to which all the others must conform, unless it at least appears that there is some good and valid reason why the particular municipality singled out should alone be the recipient of the benefit conferred or burden imposed. Otherwise, it is that arbitrary class legislation which Article XI, Section 8 of our Constitution forbids, whether the object of the legislation be an individual, a

county or a municipality, or whether it affects such municipality in its governmental capacity.

The question presented on this appeal does not necessitate a determination of the question of the qualification of voters in special municipal elections for bond issues or other abstract questions involving referendum elections and is not to be taken as overruling *Earnest* v. *Greene County*, 138 Tenn. 442, 198 S. W. 417, or similar cases.

CHAMBLISS and GAILOR, JJ., concur.

PREWITT, J., did not participate in the consideration of this case.

DISSENTING OPINION.

MR. JUSTICE NEIL delivered the dissenting opinion.

I am constrained to enter my dissent from the majority opinion in this case and in expressing my views upon the questions involved I do so with great deference to my associates.

The sole question before the Court is as to the constitutionality of Chapter 602 of the Private Acts of 1945, which provides that in all elections held in the Town of McMinnville, general or special, ''for election of officers, or for any other municipal purpose, the payment of a poll tax as a prerequisite for the privilege of voting in such elections shall not be required.''

I do not think the act is in contravention of Article XI, section 8, of the Constitution, which provides that the legislature shall have no power to suspend any general law for the benefit of any particular individual, etc. The provision here involved has no application to municipal corporations. In *State* v. *Wilson*, 80 Tenn. 246, it was expressly held that this section ''clearly relates only to

the conferring of rights, etc., upon individuals, and the limitations of the second clause are so manifestly directed to the same object, *the scope and purpose of the entire section having no possible bearing upon municipal corporations, . . .* " The language I have italicized is important. The case was reaffirmed in *Williams* v. *Nashville,* 89 Tenn. 487, 15 S. W. 364, and again in the Redistricting Cases, (*Grainger County* v. *State*), 111 Tenn. 234, 271, 80 S. W. 750, also in *Furnace Co.* v. *Tennessee Cent R. Co.,* 113 Tenn. 697, 722, 87 S. W. 1016, 1022 wherein it was said that, "Since the case of *State v. Wilson* [*supra*], it has been the settled law of this state that special legislation as to municipal corporations is not within the inhibition of article 11, section 8, of the Constitution of 1870."

This section of the Constitution could not refer to laws that may be enacted for the purpose of carrying out in detail the objects of government. All municipal charters relate to the exercise of sovereignty by the town or locality that is incorporated. In *Com. ex rel. Elkin* v. *Moir,* 199 Pa. 534, 49 A. 351, 352, 53 L. R. A. 837, 85 Am. St. Rep. 801, municipalities are said to be "merely an agency instituted by the sovereign for the purpose of carrying out in detail the objects of government." When, therefore, a town is incorporated by the legislature and clothed with special governmental powers, its charter does not suspend any general law for the benefit of individuals, because the act is in aid of the sovereign and not for the benefit of individuals residing within the locality affected.

The statement to the contrary made by Mr. Justice M. M. Neil in *Malone* v. *Williams,* 118 Tenn. 390, 437, 103 S. W. 798, 121 Am. St. Rep. 1002, is not true as a matter of law and is highly controversial as a matter of fact.

It is no concern of the public that the citizens of one town elect their city officials without being required to exhibit a poll tax receipt when voting. What interest have the voters in other towns and cities in how the people of McMinnville elected their city officials and otherwise carry on their local government?

It cannot be doubted that the legislature has the authority to establish municipal governments in Tennessee, and even deny to the people affected in said localities the right to vote on municipal questions either with or without exhibiting a poll tax receipt. The validity of a city's corporate existence is in no way determined by who votes in an election or upon what condition, or whether there is in fact any election at all. In 37 Am. Jur., Municipal Corporations, Sec. 83, it is said: "In other words, how far the people of a municipality may be allowed to participate in the choice of officers who are to administer the affairs of local government is, *in most jurisdictions, regarded as a matter exclusively within the discretion and judgment of the Legislature.*" (Italics mine.)

Under the general law and according to the weight of authority, the legislature has full power and control over municipal officers and the method of their selection or appointment. 37 Am. Jur., Municipal Corporations, Sec. 83.

The question made on this appeal relates solely to the qualification of voters in municipal elections. In *Richardson* v. *Young*, 122 Tenn. 471, 125 S. W. 664, and again in *Vertrees* v. *State Board of Elections*, 141 Tenn. 645, 214 S. W. 737, 739, it was held that, since municipal officers are not "referred to in the Constitution," they may be "[selected] in such manner as the Legislature shall direct." In these cases the Court rested its opinion

upon Article VII, section 4, of the Constitution, which reads as follows:

"The election of all officers, and the filling of all vacancies not otherwise directed or provided by this Constitution, shall be made in such manner as the Legislature shall direct."

In *Vertrees* v. *State Board, supra,* the Court had under consideration the validity of Chapter 139, Pub. Acts of 1919, which conferred upon women the right to vote for electors for President and Vice President of the United States. The act was sustained upon the ground that our Constitution made no provision as to the manner of their election and hence the election of such officers could be "made in such manner as the Legislature shall direct." Now what was said with reference to the election of electors for President and Vice President is applicable to the election of municipal officers as well as elections touching municipal affairs, since there is no provision made in the Constitution for the manner of electing such officers, and it is clearly true that there is no provision in the Constitution relating to legislation as to the administration of municipal affairs. The result is the legislature itself may elect the officers of a municipal corporation, or provide some other manner of their selection within its discretion.

Reference is made in the majority opinion to Code, sections 2027 and 2029. Section 2027 provides, "Every person in this state, who is otherwise a qualified voter under the constitution and laws," etc., is required to pay a poll tax as a condition precedent to voting. Section 2029 provides that "satisfactory evidence to be furnished by the voter to the judges of the election, whether general or special, whether national, state, county, or municipal, that he has paid the poll tax *comtemplated by*

*the. Constitution,* assessed against him, . . . shall
consist of the original poll tax receipt.'' (Italics mine.)

It thus expressly appears that only those who are
qualified voters under the Constitution and laws are re-
quired to exhibit a poll tax receipt. There is nothing to
be found in either the Constitution or the laws prescrib-
ing who shall be qualified to vote in a municipal election;
and yet it is erroneously insisted that, in order to vote
in a city election, the voter must be a qualified voter
under the Constitution, that is, exhibit a poll tax receipt
to the judges of the election, even though the legislature
has by the act here assailed eliminated it as a condition
precedent to vote for city officials. The authorities are
abundant, and we have cited many in this opinion, that
the legislature may provide for the election of municipal
officers by persons who are not qualified voters accord-
ing to constitutional requirements.

It would be a Herculean task to examine the charters of
the various municipalities of the state as to who are quali-
fied to vote in the respective cities, but an examination
of only a few discloses the fact that in a number (eleven
charters were amended in 1943) it is provided that voters
shall not be required to exhibit a poll tax receipt as a
condition precedent to voting in the municipal election.
In one large city (Memphis) the charter was amended
to provide that voters are not required to have a poll
tax receipt in order to vote for the president and mem-
bers of the city board of education. The poll tax law
remains in effect as to the election of all other public offi-
cials. The City of Chattanooga has amended its charter
by eliminating the poll tax as a condition precedent to
voting. Under another charter (Knoxville), provision is
made for the passage and repeal of city ordinances by
voters in an initiative and referendum election, this being

in addition to the enactment of ordinances by the city council.

It is impossible to determine the number of city charters that would be invalidated if the act in question should be held unconstitutional. It might also result in invalidating many municipal bond issues, as where they have been approved in an election in which voters participated without being required to exhibit a poll tax receipt.

Under the rule deducible from the majority opinion, unexpected and embarrassing consequences are bound to follow. For instance: Many of our municipalities have charter provisions authorizing non-residents owning property in such municipalities to vote in city elections. Section 1938 of the Code provides: "All voters shall be required to vote in the civil district or ward or precinct in which they reside, except as hereinafter provided; and any person violating these provisions shall be guilty of a misdemeanor, and be fined not less than twenty dollars nor more than fifty dollars." Many municipal elections have been held in which, among other things, bond issues were authorized. According to the rule announced by the majority, these elections would be void, as we have pointed out; officers chosen in them would be interlopers and bonds issued invalidated. *Weil, Roth & Co.* v. *Town of Newbern*, 126 Tenn. 223, 148 S. W. 680, L. R. A. 1915 A, 1009, Ann. Cas. 1913E, 25.

Moreover, all persons voting in these elections without a poll tax receipt would be subject to prosecution.

The majority relies upon *Clark* v. *Vaughn*, 177 Tenn. 76, 146 S. W. (2d) 351, as controlling the instant case. While my views as herein expressed seem to run counter to the holding of the Court in that case, I do not think

it is at all necessary to overrule it. There are many reasons why it should be sustained.

With entire respect to the views of the majority, it seems to me they entirely misconceive the effect of the statute here under consideration. They treat the statute as if it purported to relieve qualified voters in McMinnville of the duty of paying poll tax and of exhibiting satisfactory evidence of such payment to the judges of election. The statute does nothing of the kind. These duties are still exacted of qualified voters who participate in elections provided by the Constitution and general laws of the state.