William M. LEECH, Jr., the Attorney General, et al., Appellants,

v.

WAYNE COUNTY et al., Appellees.

Supreme Court of Tennessee.

Sept. 24, 1979.

Rehearing Denied Oct. 22, 1979.

William M. Leech, Atty. Gen. in pro. per., Kenneth R. Herrell, Asst. Atty. Gen., Nashville, for appellants.

George G. Gray, Charles J. Barnett, Waynesboro, for appellees.

## OPINION

HARBISON, Justice.

This case involves the constitutionality of certain provisions of Chapter 934 of the

Public Acts of 1978, providing for the restructure of county governments.

Under the terms of the act, in Wayne County a county executive was to be elected in 1978, but the county judge remained in office for the remainder of his term for the purpose of performing judicial duties. Thereafter these duties were to be transferred to the county executive. Also, the county legislative body was subjected to special statutory restrictions not imposed upon such bodies generally. The trial judge held all of the special provisions of the 1978 act applicable to Wayne County invalid and impermissible class legislation under Article XI, § 8 of the state constitution.

In the case of *Waters v. State ex rel. Schmutzer*, 583 S.W.2d 756 (Tenn.1979), the Court considered some of the provisions of this statute which are involved in the present litigation, particularly those conferring judicial authority upon the county executive. In the *Waters* case the provisions of Chapter 934 of the Public Acts of 1978 purporting to transfer the judicial functions of the county judge or county chairman to the county executive were held to violate Article VI, § 4 of the state constitution. For that reason, a significant part of the structure or plan for county government contained in the 1978 statute cannot and will not be implemented.

With some exceptions, the legislation contemplated the election in 1978 of a county executive in those counties which had formerly had a county chairman, county administrator or county manager as the chief executive or fiscal officer. There were some nineteen of these counties. Seventy-four counties, prior to the 1978 legislation, had incumbent county judges, many of whose terms of office did not expire until 1982. In some of these, however, the county judge had been divested of judicial duties by private acts and the term of office reduced to four years. The 1978 legislation permitted most of the county judges, except in some of the larger counties and except in Wayne and Roane Counties, to remain in office until the expiration of their terms, performing both judicial and executive, or fiscal, duties. In Wayne and Roane Counties, a county executive was to be elected in 1978, as in those counties formerly having county chairmen, but judicial functions were not conferred upon the county executive and were not to be transferred until 1982 or until the death or resignation of the county judge. In most of the other counties having a county judge, judicial functions were to be transferred to the county executive in 1982, or sooner in the event of the death, resignation or removal from office of a county judge.

As a result of the holding of this Court in the *Waters* case, the provisions of the 1978 legislation respecting the transfer of judicial functions have been invalidated. The decision in that case does not affect the legislative plan to have county executives elected in most of the counties, but it does require that a separate or special provision be made for the judicial functions of the county-paid judge or judges holding the juvenile and/or monthly county courts in all counties where county executives were given judicial duties either in 1978 or in future years. In effect, unless the legislature revises the entire scheme, after *Waters* there will have to be separate officials in each county, one or more performing judicial functions and another those of the county executive.

This is what the legislature has already provided in Roane and Wayne Counties in the 1978 Act.

According to the 1970 census Wayne County had a population of 12,365 and Roane County 38,881.

In or before August 1978 county executives were elected in twenty-four counties. In six of these, other than Wayne and Roane Counties, there formerly had been county judges. These six counties and their respective populations are:

| | |
|---|---|
| Giles | 22,138 |
| Hamilton | 255,077 |
| Overton | 14,866 |
| Rutherford | 59,428 |
| Sevier | 28,241 |
| Van Buren | 3,758 |

In the following counties, county executives were chosen to replace former county chairmen, administrators or managers. Population figures are from the 1970 census.

| | |
|---|---|
| Anderson | 60,300 |
| Cannon | 8,467 |
| Chester | 9,927 |
| Cocke | 25,283 |
| Crockett | 14,402 |
| Dyer | 30,426 |
| Fayette | 22,692 |
| Hamblen | 38,696 |
| Jefferson | 24,940 |
| Johnson | 11,569 |
| Meigs | 5,219 |
| Moore | 3,568 |
| Putnam | 35,487 |
| Rhea | 17,202 |
| Unicoi | 15,254 |
| Washington | 73,924 |
| White | 16,329 |

The foregoing tables do not include Wayne and Roane Counties where county executives were called for in 1978 to replace the county judge except for judicial duties. An election was held in Wayne County, but has not yet been held in Roane.

■ It is apparent that, pursuant to the 1978 legislation, many counties having approximately the same populations as Wayne and Roane were required to elect county executives to replace their former chief· county officers. It is also apparent that in those counties where judicial duties were transferred to the county executive, there will have to be special provisions made by the local legislative bodies to choose someone else to perform those duties, pursuant to the *Waters* decision, until remedial legislation is provided. Accordingly, Wayne and Roane Counties are not alone in having a county executive without judicial duties, nor are they treated differently by the 1978 legislation from many other counties close to them in size and population.

The statutory provisions pertaining to Wayne and Roane Counties, insofar as they affect the county judge and the county executive, are part of a transitional plan made necessary by recent constitutional changes. In our opinion, they are not part of any general, mandatory uniform scheme of county government. Rather, these two counties were classed with twenty-three other counties having a county chairman, a similar chief officer or outgoing county judge. The net effect of the 1978 legislation was that twenty-four county executives had been elected by August 1978 and some sixty-nine others will be elected in 1982 or sooner in the event of a vacancy in the office of county judge.

■ The General Assembly has very broad powers and discretion with respect to the structure of local governments, including some special authority which was added in Article VII of the state constitution, as revised in 1978. That Article, in part, provides:

"The General Assembly *may provide alternate forms of county government* including the right to charter and the manner by which a referendum may be called. The new form of government shall replace the existing form if approved by a majority of the voters in the referendum." (Emphasis added).

■ It is apparent that the constitution does not mandate a uniform structure of county governments across the state. It specifically authorizes legislation creating different forms of local organization. In our opinion Chapter 934 of the Public Acts of 1978, particularly after the *Waters* decision, does not involve the creation of rigid patterns or norms. The General Assembly did move toward more uniformity than previously existed, but the statute contains numerous special provisions affecting local government in particular counties. It apparently sought to achieve some uniformity by 1982, but not immediately. Only transitional features of the legislation are involved with respect to the Wayne and Roane County executives.

In T.C.A. § 5–551 there are a number of special provisions concerning forms of government previously established by private acts. These provide, among other things, that in McMinn County, having a

county manager form of government, the General Assembly shall establish an alternate form of county government which by referendum shall be submitted to the qualified voters. Incumbent members of the legislative body, however, shall remain in office until 1982 or until the alternate form of government is established. If an alternate form of government is not established prior to January 1, 1982, then the county government shall be determined in accordance with the more general provisions of Chapters 1, 5 and 6, Title 5, Tennessee Code Annotated.

It is apparent that the General Assembly did not intend for McMinn County, initially at any rate, to be embraced within the more general scheme provided in other parts of the 1978 statute. It had had a county manager form of government previously, but it is not treated in the act like other counties having that form of government or other counties with similar populations.

There are also special provisions for the transitional governments of knox and Polk * Counties, while Shelby and Davidson Counties are generally excepted from the provisions of the 1978 legislation.

With respect to county executives, as treated in Chapter 6 of Title 5, little, if any, general scheme or uniform structure appears, insofar as their compensation is concerned. These officials are to be selected in nearly all of the counties in the years between 1978 and 1982. The County executive as financial agent is given a minimum salary in T.C.A. § 5–613, but a large number of local variations, by population bracket, are appended thereto.

█ In our opinion, the 1978 statutes, insofar as they involve the county judge and county executive of Wayne County, are not violative of Article XI, § 8 of the state constitution. In order for the provisions of that Article to come into play, an act which is either local or local in effect must contravene some general law which has mandatory statewide application. *See Rector v. Griffith,* 563 S.W.2d 899 (Tenn.1978). In view of the transitional nature of the statutory provisions regarding the county executive and the county judge, together with the invalidation in the *Waters* case of significant portions of the governmental structure created by the 1978 statute, we are of the opinion that an invidious discrimination violative of Article XI, § 8 of the state constitution has not been demonstrated with respect to the county executive and county judge of Wayne County. It must be remembered that the 1978 statute was a restructuring act for county governments, enacted to effectuate changes made in the state constitution in 1978. It was necessary that there be, in many instances, special temporary provisions made in a number of counties, and we do not find that the provisions here under consideration violate any general mandatory statewide scheme existing prior to the 1978 legislation or created within it. The trial judge erred in holding to the contrary.

A somewhat different problem is presented by the provisions of the 1978 statute relating to the legislative body of Wayne County. As directed by new constitutional provisions in Article VII, the act created a county legislative body as the basic legislative unit in each county of the state, except in counties having metropolitan governments. Such a legislative body was to be created in every other county of the state, effective September 1, 1978, except for counties specially provided for in T.C.A. § 5–551 and in counties organized under the consolidated government provisions of Article XI, § 9.[1]

T.C.A. § 5–502 provides generally for the county legislative body in all of the counties except those few not governed by it. It provides for the composition, the number of districts, the qualification of members, their terms of office and the date of their elec-

---

* *See* Tenn.Pub.Acts, 1978, ch. 934, § 35(c); in the codification of this section, reference is made to Hamilton, rather than Polk, County. T.C.A. § 5–551(c) (Supp.1978).

1. Article VII, as amended in 1978, by its terms does not apply to counties organized under those provisions of Article XI, § 9.

tion. In each county the legislative body is given discretionary authority "to determine whether each office in multi-member districts will be separately designated on the ballot with candidates required to run and to be elected on the basis of separately designated offices within the district."

There is, however, a proviso which purports to except from the provision just quoted two counties by population bracket, one of these being Wayne County. In Wayne County the statute requires that "each office in multi-member districts shall be separately designated on the ballot, and candidates shall run and be elected on the basis of such separately designated offices within the district." [2] This special provision resulted from an amendment sponsored by the Wayne County representative in the House of Representatives.

The trial judge held that this separate provision violated Article XI, § 8 of the state constitution.

While a strong argument can be made in support of this conclusion, in view of the broad powers which the General Assembly has with reference to the structure of local governments and their agencies, we are reluctant to rest our decision on that provision of the state constitution nor do we find it necessary to do so. In all likelihood the General Assembly could, by local act, adopt such a provision as to a particular county. The powers which the General Assembly previously possessed respecting local governments were reinforced and strengthened as to county governments by the 1978 amendment to Article VII of the state constitution. That article, however, did not repeal or modify those provisions of Article XI, § 9 popularly known as the "Home Rule" provisions, which, insofar as pertinent here, are as follows:

"... any act of the General Assembly private or local in form or effect applicable to a particular county or municipality either in its governmental or its proprietary capacity shall be void and of no effect unless the act by its terms either requires the approval by a two-thirds vote of the local legislative body of the municipality or county, or requires approval in an election by a majority of those voting in said election in the municipality or county affected."

Indeed, Article VII itself contemplates referenda when particular "alternate" forms of county government are proposed by the General Assembly.

In our opinion, the home rule provisions of Article XI, § 9 and the referendum requirements of Article VII would not be applicable to the general statewide restructuring provisions in the 1978 legislation, made necessary by recent constitutional amendments. Where, however, the General Assembly has made a permanent, general provision, applicable in nearly ninety of the counties, giving the local legislative bodies discretion as to the method of election of their members, we do not think it could properly make different provisions in two of the counties, by population bracket, in the manner attempted here. Insofar as Wayne County is concerned, this amounted to nothing more than a private act relating to the composition of its county legislative body, without any statement of reasons and without requirement of a local referendum. In our opinion, neither Article VII nor Article XI, § 9 authorizes this type of legislation, nor can it be justified as being a transitional part of a general restructuring scheme.

Accordingly, the judgment of the trial court is affirmed insofar as it held unconstitutional the provisions of T.C.A. § 5–502 relative to Wayne County.

The cause is remanded to the trial court for further proceedings consistent herewith. Costs incident to the appeal will be taxed one-half to appellants and one-half to appellees; costs in the trial court will be adjudged there.

BROCK, C. J., and COOPER, J., concur.

HENRY and FONES, JJ., dissent.

---

**2.** An identical provision excepts Bledsoe County by population bracket.

HENRY, Justice.

I respectfully dissent from the majority opinion.

While other and lesser questions lurk in the record, the principle issue is whether a county constitutionally may be exempted from the application of a significant provision of a general law applicable to all other counties similarly situated, by the use of a population bracket exception, absent a rational basis for the exemption.

## I.

### Constitutional Background

Article VII, Section 1 of the Constitution of 1870 enumerated the various county officers and Section 2 determined the proper method for filling vacancies. Its provisions were somewhat meager; it was silent on the structure of county government.

The Constitutional Convention of 1977 extensively rewrote these sections and provided a general framework for the government of Tennessee counties. A wholly new office of county executive was created and, in place of the quarterly court, the new constitution provides for a legislative body. In pertinent part, Article VII, Section 1, now provides:

The legislative body shall be composed of representatives from districts in the county as drawn by the county legislative body pursuant to statutes enacted by the General Assembly.

There follows a provision for decennial reapportionment and an exemption in favor of counties organized under Article XI, Section 9 of the State Constitution.

The ensuing paragraphs provide a method for the selection of alternate forms of county government and a prohibition against the diminution of an officeholder's term as a result of the adoption of the article.

It was evident that legislative action was required to give vitality to these skeletal provisions. The legislature responded with a carefully considered and comprehensive plan of implementation, to wit: Chapter 934 of the Public Acts of 1978, which appears in the Official Code as Chapters 5 and 6 of Title 5 (Section 5–501, *et seq.*, and Section 5–601, *et seq.*)

## II.

### The Implemental Legislation

The Legislature was faced with a two-fold problem.

First, it had to provide the specifics of the new basic structure for county government in Tennessee.

Secondly, it had to provide an orderly method of transition.

After recognizing the "complexity" of county government in Tennessee, the necessity for its "continuity," the constitutional considerations involved, and the myriad problems posed by the provisions of general and private acts establishing the duties and responsibilities of such officeholders, the Legislature declared that these considerations:

dictate a transition in county government in which the *smaller counties* continue the incumbent county judge for the remainder of his term as the chief executive officer of such counties to exercise the authority and duties for which they were elected. (Emphasis supplied) 1978 Public Acts, Ch. 934, § 42.

Further, the Legislature declared:

It is the intention of the General Assembly by this act to create a *uniform system* of county government by the establishment of the county legislative body and the office of county executive as the basic units of government, while providing a reasonable period of transition for certain counties to avoid the disruptive effects of rapid change in their government. (Emphasis supplied) *Id.*

Thus, the stated intention of the Legislature and the declared public policy is that the county judges of the smaller counties, for the remainder of their terms, perform the duties of county executives and that there be a uniform system of county government with an orderly period of transition.

It must be borne in mind that there is no constitutional requirement that all Tennessee counties be dealt with in precisely the same manner. Our Constitution is satisfied when all counties similarly situated are treated uniformly. When a county is exempted from the general law the exemption must have a rational basis. Section III, *infra*.

Our Constitution specifically permits the General Assembly to "provide alternative forms of County Government." From the beginning of Tennessee time our courts have recognized this right. This provision adds nothing to existing law; it merely constitutionalizes formally and explicitly that which formerly rested on decisional law.

This is not the question.

The Legislature, by this Act, has established the same *form of government* in all counties of Tennessee except those having a metropolitan government. Sections 5–501 and 5–601, T.C.A. It contains transitional provisions for McMinn (County Manager), Knox (Commissioners), and Polk * (County Council) counties. Section 5–551, T.C.A. The nature of a metropolitan government and its similarity to the form of government created by Chapter 934 of the Public Acts of 1978 make the exceptions reasonable and the reasons therefor apparent. The transitional provisions for McMinn, Knox, and Hamilton counties show facially that they are in harmony with the stated purposes of the Act and are rationally based.

It is important to remember that Chapter 934 does not exempt Wayne County from the *form of government* created by the Act; it is exempted solely from Section 5–602 governing the date of the election of the County Executive and the commencement of his term, and from Section 5–502 relating to the designation on the ballot of candidates for the legislative body in multi-member districts.

* See Chapter 934, Acts 1978, § 35(c); in the codification of this section, reference is made to Hamilton, rather than Polk County. Sec. 5–551(c) (Supp.1978).

The majority opinion is premised to a substantial extent upon the proposition that the Act does not adopt a "general mandatory statewide scheme." This is precisely what the Act does; but the majority wholly fails to recognize the critical distinction between the *form of government* on the one hand, and the mechanics of its inauguration on the other. With this prelude we examine the Act.

Three sections of the statute present troublesome issues which are critical to this controversy.

Section 8, codified as a portion of Sec. 5–502, T.C.A., relates to the county legislative body. It governs composition, the number of districts, the qualification of members, their terms of office, the date of their election, and officially designates the legislative body as the Board of County Commissioners. The body is clothed with the discretion "to determine whether each office in multi-member districts will be separately designated on the ballot with candidates required to run and to be elected on the basis of such separately designated offices within the district." But, there is a proviso, which forms a substantial part of this lawsuit:

> Provided, however, that in any county having a population of not less than 12,-350 nor more than 12,400 according to the 1970 federal census or any subsequent federal census, each office in multi-member districts shall be separately designated on the ballot, and candidates shall run and be elected on the basis of such separately designated offices within the district.[1]

This exception applies only to Wayne County, which had a population of 12,365 persons under the census of 1970, and is the only county within the stated population bracket. The situation would be precisely the same had Wayne County appeared by name.

1. An identical proviso excepts Bledsoe County by population brackets.

This proviso was incorporated in the bill as a result of an amendment presented by Representative Davidson of Wayne County. (Amendment 23, 1978 House Journal at 3515–3516). The Senate concurred. (Amendment 23, 1978 Senate Journal at 2919–2920).

Section 16 of the Public Act, codified as Sec. 5–601 through Sec. 5–603, relates to the county executive. It is provided that in Class I counties,[2] Class 2 counties having a county coucil form of county government,[3] "*counties having a population of not less than 12,350 nor more than 12,375 or not less than 38,800 nor more than 38,900 by the federal census of 1970 or any subsequent federal census,*"[4] and those having a chairman of the county court,[5] "the county executive shall be elected in the regular August election in 1978 and every four (4) years thereafter." Sec. 5–602(1), T.C.A.

Again, the emphasized language identifies Wayne County. This language came by amendment proposed in the House, (Amendment 8, 1978 House Journal at 3508) and concurred in by the Senate. (Amendment 8, 1978 Senate Journal at 2915).

Except for these counties, Section 16(b)(2) provides that:

in counties having an incumbent county judge elected in 1974 for a term of eight (8) years, the incumbent county judge shall serve as county executive until the regular August Election in 1982, at which time, and every four years thereafter, a county executive shall be elected.
Sec. 5–602(2), T.C.A.

The final subsection of 5–602 is a catchall provision covering county judges with a four year term of office and counties with administrators or managers:

In all other counties, the county executive shall be elected in the regular August election in 1978 and every four (4) years thereafter.
Sec. 5–602(3), T.C.A.

It is stipulated, and is a verified fact, that there are 69 counties "which now have County Judges, exercising Judicial and Administrative functions, and as in Wayne County, they were elected in 1974 and their terms do not expire until 1982."

Therefore, the result of this Act is that Wayne County, one of the "smaller" counties of the State[6] and Roane County[7] are the only two counties in the State having county judges that are required to have both a county judge and a county executive for the four year period beginning September 1, 1978 and ending August 31, 1982. And this by virtue of a population bracket exception to a general law designed to be uniform and in the face of legislatively declared public policy that in "smaller counties the county judge serve out the remainder of his term before a county executive is elected.

Wayne County is also excepted by population bracket from Section 17 of the Act, (Sec. 5–606, T.C.A.) which vests the county executive with all the judicial authority formerly exercised by the county judge, or an official exercising similar powers. Although this portion of the Act was declared to be unconstitutional by this Court in *Waters v. State of Tennessee, ex rel. Schmutzer*, 583 S.W.2d 756 (Tenn.1979), it has no effect on the issues involved in this controversy.

2. Counties having a population of 400,000 or more. (Sec. 8–2402, T.C.A.) Davidson and Shelby are in this category.

3. Hamilton and Knox are in this population category. Only Hamilton has a county council form of government. It has both a county judge and a county executive.

4. The second population bracket identifies Roane County.

5. There were fourteen (14) such counties, i. e. Cannon, Chester, Cocke, Crockett, Dyer, Fa-

yette, Hamblen, Jefferson, Johnson, Meigs, Morgan, Rhea, Unicoi and Washington. Additionally, Anderson, Moore and White had administrators and Putnam had a county manager.

6. There are 26 counties having a smaller population and 68 having a greater population.

7. Roane County, with a 1970 population of 38,-881, is the 17th largest county in the State.

The majority seeks to bolster its conclusion by the citation of various county compilations. All are based upon the erroneous premise that we are presented with a question as to the constitutionality of a legislative enactment creating a *form of county government.* We are not; Wayne County is not exempted from the form of government established by the Act.

At first blush these compilations are persuasive; upon analysis they are not pertinent.

The first compilation lists six (6) counties in which county executives were elected in August 1978, where "there formerly had been county judges." This statement is true, as far as it goes. We look to the enumerated counties.

1. *Giles County.* By Chapter 158, Private Acts of 1973, the judicial duties of the county judge were transferred to the General Sessions Court, and his term of office was reduced to four years. As a result of Chapter 934, Giles County elected a county executive in 1978 when the *county judge's* term of office expired.

2. *Hamilton County.* Chapter 934 converted its county council to the county legislative body. Transitional provisions are properly contained in the Act for this metropolitan (not one of the "smaller" counties) county. The Act had no immediate effect on this county.

3. *Overton County.* By Chapter 228, Private Acts of 1974, the office of county judge was abolished and the judicial functions transferred to the General Sessions Court. The county judge was replaced by a county manager with a four (4) year term. Subsequently, Chapter 16 of the Private Acts of 1975 changed the title of the office to county judge. *When his term of office expired* in 1978, a county executive was elected pursuant to Chapter 934.

4. *Rutherford County.* As in Giles and Overton Counties, the judicial functions of the county judge were vested in the General Sessions Court by Chapter 187 of the Private Acts of 1974. The county judge's

term of office was reduced to four (4) years, and *upon expiration of the office in 1978,* a county executive was elected under Chapter 934.

5. *Sevier County.* Upon the *death of the county judge* in 1978, the office was filled by a temporary appointment. Pursuant to Section 16(c) of Chapter 934, the vacancy was filled by the election of a county executive in the 1978 election.

6. *Van Buren County. The incumbent county judge of Van Buren County re-signed* in 1977. A temporary appointment was made to fill the office until 1978, at which time a county executive was elected under the provisions of Chapter 934.

None of these counties was required to elect a county executive under Chapter 934 and continue in office a county judge. None was excepted from its application, except to the extent of the transitional provisions of the Act. Hence, this compilation is meaningless; there is no analogy to Wayne County.

It is next asserted by the majority that in seventeen (17) listed counties,[8] county chairmen, administrators, or managers were replaced by county executives. The inclusion of these smaller counties with those required to elect in 1978 rests upon a rational basis, because in each case the term of the chief executive officer expired that year.

Thus, a rational basis exists for the four metropolitan counties and for those counties having a county chairman or other officer whose term expired in 1978.

The majority opinion, in reference to Roane and Wayne counties, asserts:

these two counties were classed with twenty-three other counties having a county chairman, a similar chief officer or outgoing county judge.

This simply is not an accurate statement. Wayne County did not have a county chairman, a similar chief officer, or an outgoing judge. It had a county judge whose term of office did not expire until 1982 as in 69 other counties. In the absence of a stated

8. This enumeration should have included Morgan County.

or discernible rational basis for distinguishing Wayne County from the other 69 similarly situated counties, the classification is unconstitutional.

The rational—and uniform—scheme of the Act is that in those counties where the chief executive officer's term expires in 1978, an election is conducted in 1978. In all other counties, where the incumbent judge's office does not expire until 1982, an election is conducted that year. This comports with the mandate of Art. 7, Sec. 1, of the State Constitution that "[n]o officeholder's current term shall be diminished" as a result of this article.[9] Moreover the Act so provides. Chapter 934, Section 37.

This is the theme and theory of the Act. It is the Legislature's way of abiding the Constitution. Providing for the election of a county executive in Wayne County in 1978, prior to the expiration of the incumbent county judge's term of office, is a clear departure from the pattern of transition and the stated intention of the Act.

The practical effect of the Act is to require Wayne County to continue to have a county judge exercising judicial functions, and simultaneously to have a county executive performing the non-judicial duties imposed by the Act. The fortuitous circumstance that *Waters, supra,* operates to make this scheme of practical utility is of no consequence to the determination of the issue at hand.

### III.

*Tennessee Constitutional Considerations*

I examine the questioned portions of the implementing statute in light of pertinent provisions of the Constitution of Tennessee.

*Article I, Section 8*

That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the *law of the land.*

*Article XI, Section 8* (in pertinent part)

The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the *general laws of the land;* nor to pass any law granting to any individual or individuals, rights, privileges, immunitie, [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law. (Emphasis supplied)

The "law of the land" clauses of these two sections are substantially equivalent to those contained in the "due process" and "equal protection" clauses of the federal constitution. *Motlow v. State,* 125 Tenn. 547, 590, 145 S.W. 177 (1911). As a general rule, that which violates the one would also violate the other. *Railroad v. Crider,* 91 Tenn. 489, 19 S.W. 618 (1892).

It is settled law that a special act affecting a county in its governmental capacity is valid so long as it does not contravene the general law. *Brentwood Liquors Corp. of Williamson County v. Fox,* 496 S.W.2d 454 (Tenn.1973); *Donathan v. McMinn County,* 187 Tenn. 220, 213 S.W.2d 173 (1948).

Numerous cases draw a distinction between special or private acts affecting a county in its governmental capacity when there is no general statute, and those attempting to impose liabilities or create exemptions not sanctioned by the general law.

An often quoted and correct statement of applicable general principles will be found in *Sandford v. Pearson,* 190 Tenn. 652, 231 S.W.2d 336 (1950), wherein Justice Gailor, writing for the Court, said:

Our cases make a clear distinction between (1) Private Acts which confer special benefits and impose special burdens on the citizens of one county, *when there is no general statute,* and when before the Private Act, there was only the com-

---

9. It is irrelevant to the question under consideration that the Wayne County Judge's term of office is not diminished.

mon law, and (2) those Private Acts which undertake to *amend or abrogate a prior general statute* in its application to a particular county or class of counties. Private Acts of the former class have been upheld, and those of the latter class struck down. (Emphasis supplied) 190 Tenn. at 657–58, 231 S.W.2d at 338.

Exceptions or exemptions contained in a general act, or an act amendatory thereto are in precisely the same category and must be tested by the same rules. There must be a valid justification and a rational or reasonable basis for the distinction.

A most excellent articulation of this general rule will be found in the landmark case of *Town of McMinnville v. Curtis*, 183 Tenn. 442, 192 S.W.2d 998 (1946), wherein then Special Justice Tomlinson recognized that many acts had been upheld which affected particular counties in their governmental or political [10] capacities, but pointed out that the act "either was not in conflict with the provisions of the general law, or the classification was upon a reasonable basis." 183 Tenn. at 447, 192 S.W.2d at 999.

Justice Tomlinson tersely and thoroughly translated the precedents established by this Court:

[T]he well settled law [is] that the legislature may constitutionally enact a special act affecting one particular county or municipality alone in its political or governmental capacity, provided such special act is not contrary to the provisions of a general law, applicable to all the counties or municipalities. 183 Tenn. at 448, 192 S.W.2d at 1000.

Our cases uniformly hold that an act, general or private, which suspends the general law must be dependent for its constitutionality upon the existence of a reasonable basis for the exclusion. *Brentwood Liquors Corp. of Williamson County v. Fox, supra*; *Crewse v. Beeler*, 186 Tenn. 475, 212 S.W.2d 39 (1948).

It is a matter of public record that exemptions or exceptions from public acts are frequently accomplished by the expedient of identifying counties by population brackets. This is not *per se* a pernicious practice. Indeed, in much legislation, Tennessee counties are classified according to their population, e. g. Sec. 8–2402, T.C.A., *et seq.*, relating to the compensation of county officers. But these acts affirmatively show a rational scheme of classification. When general acts binding on all counties throughout the state, or on all that are similarly situated, contain exceptions that remove an otherwise affected county from the reach of the enactment, such exclusions are suspect. This situation becomes particularly acute when general bills are modified by floor amendments.

This Court has addressed the exemption of counties from general laws on numerous occasions, and uniformly has required a rational or reasonable basis.

Thus, in the landmark case of *State ex rel. Bales v. Hamilton County*, 170 Tenn. 371, 95 S.W.2d 618 (1936), the Court had under consideration an act wherein Hamilton County, by population provisions, was required to pay its teachers in a manner inconsistent with the general law. Chief Justice Green wrote for the Court:

These acts are not saved because Hamilton county is designed therein by reference to its population. *Unless the act relates to a matter in respect of which a difference in population would furnish a rational basis* for diversity of laws, classification on such a basis will not be upheld. (Emphasis supplied) 170 Tenn. at 375, 95 S.W.2d at 619.

As noted in *Davidson County v. City of Nashville*, 190 Tenn. 136, 228 S.W.2d 89 (1950), when legislation deals with a county as a governmental agency a classification of the county by reference to population is not of controlling significance, but an act is not valid merely because it deals with a county in its governmental capacity. It is in making this insistence that the brief of the

---

10. Chapter 934, Acts of 1978 affects Tennessee counties in their governmental or political capacities.

Attorney General falls wide of the mark. As noted in *Davidson County*, the "discrimination must be upon a reasonable basis." 190 Tenn. at 139, 228 S.W.2d at 90.

Another significant holding is *Board of Education of Memphis v. Shelby County*, 207 Tenn. 330, 339 S.W.2d 569 (1960), in which the Court held that a population based exception to a general or uniform law violates Article XI, Section 8 of the Constitution of Tennessee.

A most excellent articulation of this issue appears in *State v. Shelby Co. Election Commission*, 209 Tenn. 289, 352 S.W.2d 809 (1961), wherein the Court again held that legislation affecting particular counties or municipalities in their governmental capacities does no violence to our constitution, when there is no conflict with general law or the classification is on a reasonable basis.

While we did not labor the issue in the recent case of *Pirtle v. City of Jackson*, 560 S.W.2d 400 (Tenn.1977), we struck down a portion of Section 6–310, T.C.A. containing a population based exception to the state zoning law. Justice Cooper spoke for the Court:

> No rational basis has been suggested, nor does any occur to us, to justify the exclusion of a few chosen municipalities from the burden of proving the reasonableness of their annexation ordinances when such a burden is placed upon all other municipalities by the general law of this state. 560 S.W.2d at 402.

I would reaffirm these principles and hold that a population based exception to a general law is offensive to Article I, Section 8 and Article XI, Section 8 of the Constitution of Tennessee in those cases where there is no sound reason and no rational basis for the exclusion.

In the instant case the Act recites no basis for the variance in favor of Wayne County, nor are we cited to any, nor does any occur to us. Wayne County is excepted from significant provisions of a mandatory statewide law and from an Act specifically declared by the Legislature to be passed pursuant to a legislative intent to "create a uniform system of county government . .

while providing a reasonable period of transition," leaving the Act in an internally inconsistent posture. The arbitrary nature of the exclusion is revealed by the fact that 26 counties smaller than Wayne County and 68 larger (less those having other recognized forms of government) are covered.

I would, therefore, hold that so much of Sections 8, 16, 17, and 18 of Chapter 934 of the Public Acts of 1978, as operate to exempt Wayne County, or place it on a different footing from other counties similarly situated, is unconstitutional and void under Article I, Section 8, and Article XI, Section 8 of the Constitution of Tennessee.

The same considerations operate to render those portions of those sections offensive to the Fourteenth Amendment to the Constitution of the United States. Again, the test must be the reasonableness of the classification. We so held in an extensive opinion in *Harrison v. Schrader*, 569 S.W.2d 822 (Tenn.1978), in which we pointed out that if the reasonableness of the class is "fairly debatable" it must be upheld. Here, it is not fairly debatable. We further pointed out that the classification would be upheld if it had a reasonable or natural relation to the legislative intent. Here, to the extent of Wayne County, it defeats the legislative intent to "create a uniform system of county government."

While I agree with the conclusion reached by the majority with respect to the constitutionality of the provision governing election of the legislative body, I do not agree that a different legal situation exists, nor do I place any significance upon the provisions being transitional as opposed to permanent. I know of no rule of law that permits a temporary violation of a constitutional imperative.

Section 5–502, T.C.A. is unconstitutional as it relates to Wayne County for the same reasons that invalidate those provisions requiring Wayne County to elect a county executive in 1978. These provisions are either both constitutional or both unconstitutional—and for the same reasons. Any different conclusion rests upon a flawed foundation.

At the very outset of its opinion, the majority summarized the Act as follows:

The 1978 legislation permitted most of the county judges, *except in some of the larger counties and except in Wayne and Roane Counties,* to remain in office until the expiration of their terms, performing both judicial and executive, or fiscal, duties. In Wayne and Roane Counties, a county executive was to be elected in 1978, as in those counties formerly having county chairmen, but judicial functions were not conferred upon the county executive and were not to be transferred until 1982 or until the death or resignation of the county judge. In most of the other counties having a county judge, judicial functions were to be transferred to the county executive in 1982, or sooner in the event of the death, resignation or removal from office of a county judge. (Emphasis supplied)

I adopt the summary. From its recitation, there emerges the inescapable conclusion that these provisions are constitutionally unsound.

FONES, J., concurs in this dissent.