# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
September 20, 2005 Session

## WALTER BAILEY, ET AL. v. COUNTY OF SHELBY, ET AL.

### Chancery Court for Shelby County
### No. CH-04-0550-3

### No. W2005-01508-COA-R3-CV - Filed November 22, 2005

### DISSENT

**CRAWFORD, P.J., W.S.**

I must respectfully dissent from the majority Opinion. The issue presented for review, as stated by the Appellants is:

> Whether the Chancery Court correctly held that County Charter, Article II, § 2.03(g)(the "Charter"and the "Amendment"), which provides that no County Mayor or County Commissioner is eligible to be elected to or to hold office for more than two consecutive four-year terms, is valid in accordance with the third paragraph of Tennessee Constitution, Article VII, Section 1 and Tenn. Code Ann. § § 5-1-201, *et seq.*

The majority correctly determines that the term limits provided for in the Shelby County Charter relate to the qualifications of the candidate. It is undisputed that Shelby County uses a charter-form of government as authorized by T.C.A. § 5-1-201 et seq., which, in turn, is authorized by the Tenn. Const. art. VII, § 1. The crux of the dispute is whether the enabling legislation, in particular T.C.A. § 5-1-210 (4), is unconstitutional by virtue of Tenn. Const. art. VII, § 1, as amended in 1978, which provides:

> **Sec. 1. County government – Elected officers – Legislative body – Alternate forms of government. –** The qualified voters of each county shall elect for terms of four years a legislative body, a county executive, a Sheriff, a Trustee, a Register, a County Clerk and an Assessor of Property. Their qualifications and duties shall be prescribed by the General Assembly. Any officer shall be removed for malfeasance or neglect of duty as prescribed by the General Assembly.

The legislative body shall be composed of representatives from districts in the county as drawn by the county legislative body pursuant to statutes enacted by the General Assembly. Districts shall be reapportioned at least every ten years based upon the most recent federal census. The legislative body shall not exceed twenty-five members, and no more than three representatives shall be elected from a district. Any county organized under the consolidated government provisions of Article XI, Section 9, of this Constitution shall be exempt from having a county executive and a county legislative body as described in this paragraph.

The General Assembly may provide alternate forms of county government including the right to charter and the manner by which a referendum may be called. The new form of government shall replace the existing form if approved by a majority of the voters in the referendum.

The majority determined that although the third paragraph of the constitutional provision allows the legislature to provide alternate forms of County government, any such alternate form of County government must conform to the requirements of the first paragraph of Tenn. Const. art. VII, § 1. The majority holds that the provision of the enabling statute permitting the County charter to determine qualifications of the legislative body is unconstitutional. I do not so interpret the constitutional provision and the legislative enactment.

In dealing with questions of constitutionality of a statute enacted by a legislature, we must be ever mindful of the presumption of constitutionality, which has been embedded in our law from time immemorial. In *State ex rel., Maner v. Leach,* 588 S.W.2d 534 (Tenn. 1979), the Court said:

It is the duty of this constitutional court of last resort to resolve every reasonable doubt in favor of the constitutionality of a legislative enactment, *Blankenship v. Old Republic Insurance Co.*, 539 S.W.2d 23 (Tenn. 1976); indeed there is a strong presumption in favor of their constitutionality. *Bozeman v. Barker*, 571 S.W.2d 279 (Tenn. 1978). This thrusts upon those who attack a statute a heavy burden. *West v. Tennessee Housing Agency*, 512 S.W.2d 275 (Tenn. 1974).

It has been said that statutes must be construed "with the saving grace of common sense." Our courts have repeatedly held that absurdities should be avoided, *Roberts v. Cahill Forge & Foundry Co.*, 181 Tenn. 688, 184 S.W.2d 29 (1944); that the courts should not place upon a statute a construction which would work to the prejudice of the public interest, *Burns v. Duncan*, 23 Tenn. App. 374, 133

S.W.2d 1000 (1939), and a construction which impairs, frustrates or defeats the object of a statute should be avoided, ***First National Bank v. McCanless***, 186 Tenn. 1, 207 S.W.2d 1007 (1948). These holdings are analogous to the instant case.

***Id.*** at 540.

The ***Maner*** Court also acknowledged the significant change that the 1978 amendment to the Constitution made as it relates to local government. The Court said:

> It is evident that, in broad form, our Constitution now provides for three types of county government:
>
> > a. Article VII government wherein the basic units of government are the county executive and the county legislative body.
> >
> > b. A consolidated form of government commonly known as Metropolitan or "Metro." *See* Article XI, Section 9, last paragraph. Any county having such a government is exempt from Article VII government.
> >
> > c. An alternate form of government – either chartered or unchartered – created by the General Assembly. Under this proviso the legislature is specifically authorized to create diverse forms of county government without regard to the general type established in Article VII.
>
> When the legislature authorizes any deviation from Article VII government its action must be ratified by the people in a referendum called for that purpose.

***Id.*** at 537.

Our Supreme Court also noted, in ***Leech v. Wayne County***, 588 S.W.2d 270 (Tenn. 1979), the sweeping change that was made by the Constitutional amendment concerning local government. The Court said:

> The General Assembly has very broad powers and discretion with respect to the structure of local governments, including some special authority which was added in Article VII of the state constitution, as revised in 1978. That Article, in part, provides:

> "The General Assembly *may provide alternate forms of county government* including the right to charter and the manner by which a referendum may be called. The new form of government shall replace the existing form if approved by a majority of the voters in the referendum."

*Id.* at 272 (emphasis in original).

The Constitution quite explicitly authorizes, in the third paragraph of Tenn. Const. art. VII, § 1, the establishment of an alternate form of government which "shall replace the existing form if approved by a majority of voters in the referendum." *Id.*

"Alternate" is defined as "a choice between two or among more than two objects or courses." "Alternative" is also defined as "offering a choice of two or more things; offering for choice a second thing or proposition or other things or propositions." *Webster's Third New International Dictionary*, p. 63 (Merriam-Webster, Inc. 1993).

The Constitutional provision is quite clear that the alternate form of County government as chosen shall replace the existing form of government, if it is so approved by the voters, and there can be little argument that "replaces" means to put in place of or to substitute for what was in existence.

The legislature enacted T.C.A. § 5-1-201 *et seq.* with full knowledge of the constitutional provision in Tenn. Const. art. VII, § 1. T.C.A. § 5-1-203 provides:

> **Authority to adopt charter form**. – (a) Each county in this state may adopt a charter form of government as provided in this part.
> (b) Such charter when complete shall result in the creation and establishment of an alternate form of county government to perform all the governmental and corporate functions previously performed by the county.
> (c) Such charter form of government shall replace the existing form if approved by a majority of the voters in a referendum.

The legislature then, in great detail, provided for the charter commission and the submission of a charter to referendum of the electorate. T.C.A. 5-1-210 provides for the charter content and states in pertinent part:

> **Charter contents**. – The proposed county charter shall provide: (1) For the creation of an alternative form of county government vested with any and all powers that counties are, or may hereafter be, authorized or required to exercise under the Constitution and general

laws of the state of Tennessee, and any and all powers and duties of such county that are required or authorized by private acts effective on the date of ratification of such charter, as fully and completely as though the powers were specifically enumerated therein;

(2) That such chartered county government shall be a public corporation, with perpetual succession, capable of suing and being sued, and capable of purchasing, receiving and holding property, real and personal, and of selling, leasing or disposing of the same to the extent as other counties;

(3) For a county legislative body, which shall be the legislative body of the county and shall be given all the authority and functions of the legislative body of the county being chartered, with such exceptions and with such additional authority as may be specified elsewhere in this part;

(4) For the size, method of election, qualification for holding office, method of removal, and procedures of the county legislative body with such other provisions with respect to such body as are normally related to the organization, powers and duties of governing bodies in counties; . . .

The majority states that there is nothing in the language of paragraph three of Tenn. Const. art. VII to indicate that paragraph three should be read as a stand-alone paragraph. I must disagree with such a reading of the provisions. Paragraph three specifically provides that any new form of government to replace the existing form must be approved by a majority of voters by referendum. The third paragraph of Tenn. Const. art. VII, § 1 means what it says when it provides for a new form of government when replaced by a majority of the voters. It is somewhat ludicrous to say that the County can have a new form of government, but it is controlled by the old form of government that the new form replaces. We should not overlook the fact that the constitutional provision is quite explicit that there must be approval by a majority of the voters and this, in turn, is referenced by Tenn. Const. art. I, § 1, which provides:

> **All power inherent in the people – Government under their control.** – That all power is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety, and happiness; for the advancement of those ends they have at all times, an unalienable and indefeasible right to alter, reform, or abolish the government in such manner as they may think proper.

Our Supreme Court recognized that significant change could be made under the third paragraph of Tenn. Const. art. VII, § 1. In *Southern Contractors, Inc. v. Loudon Cnty. Bd. of Education*, 58 S.W.3d 706 (Tenn. 2001), the Court was commenting about the theory of "Dillon's Rule," which viewed local governments as having narrowly defined powers under the state constitution. In so doing, our Supreme Court stated:

> As an important corollary to this principle, where the General Assembly grants comprehensive governmental power to the local authority without either enumerating the powers or expressly limiting the scope of the authority, that "general provision [will] be *liberally* construed." *See Linck*, 80 Tenn. (12 Lea) at 508 (emphasis in original). One example of a comprehensive grant of power may be seen in the charter government provisions for counties authorized by Article VII, section 1 of the Tennessee Constitution and Tennessee Code Annotated sections 5-1-201 to 5-1-214. Under a charter form of government, counties are authorized to "pass ordinances relating to purely county affairs," subject only to the exceptions that these ordinances "shall not be opposed to the general laws and shall not interfere with the local affairs of any municipality within the limit of such county." Counties organized under charter government, therefore, are not strictly limited to those powers otherwise granted by the General Assembly, and they possess broad authority for the regulation of their own local affairs. Consequently, when the issue concerns the scope of a general grant of power such as this, Dillon's Rule cannot be applied to narrowly limit the exercise of that power by a local authority.

*Id.* at 713.

Significantly, the third paragraph of Tenn. Const. art. VII, § 1 does not contain any prohibition on the County being authorized to set the qualification for the legislative body. To the contrary, Tenn. Const. art. VII, § 1 grants a broad and sweeping power to the County to replace the existing government in favor of an alternate form of government, in which the new government can set the qualifications of its legislative body. This interpretation is especially true in light of the fact that the constitutional provision requires the affirmative vote of the people for such replacement government. This is in keeping with Tenn. Const. art. I, § 1 providing that "all power is inherent in the people." I feel that the majority has overlooked the duty of this Court in failing to reconcile and give meaning to the provisions of the Constitution and the statute enacted by the legislature in furtherance thereof. I would find that T.C.A. § 5-1-210(4) is not unconstitutional.

Under the constitutional provision in question and the statute enacted by the legislature in furtherance of the constitutional provision, I believe the trial court correctly ruled that summary judgment should be granted for the County, and I would affirm the chancery court.


_____
**W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.**