THE STATE ex rel. v. J. M. WILSON et al.

1. CORPORATIONS. MUNICIPAL. *Election.* The Code, section 1378, which provides for a special municipal election when there has been a failure to hold the regular election at the proper time, probably applies only to the municipal corporations authorized to be organized by that chapter of the Code in which the section is found, and, at any rate, has no application to a municipal corporation created by special acts which provide for the contingency in a different and incompatible mode.

2. SAME. *Same. Officers.* Although the officers of a municipal corporation be required to be elected annually, yet if the time of election under the charter be allowed to pass, the old officers continue in

State *v.* Wilson.

office after the year, and until others are elected, and this would be the proper construction of a charter which expressly provided for a subsequent election.

3. CONSTITUTIONAL LAW. *Title of act.* The generality of the title of an act of the Legislature is no objection to its constitutionality if it cover the subject.

4. SAME. *Corporations, municipal.* A provisional continuance in office of existing municipal officers until a modification of the charter goes into effect is within the legislative competency.

5. SAME. *Statute void in part.* Although a statute be void in part because beyond the competency of the Legislature, it will be valid in other respects which are severable.

6. SAME. *Municipal corporations.* The provisions of section 8, Article XI, of the Cónstitution of 1870, limit the power of the Legislature in regard to private, but not municipal corporations; and the direction of the second clause of the section that no corporation shall have its powers increased or diminished by special laws, etc., applies to corporations in existence at the adoption of the Constitution of 1870, as well as to corporations subsequently created.

FROM LINCOLN.

Appeal in error from the Circuit Court of Lincoln county.     J. J. WILLIAMS, J.

A. B. WOODARD, N. J. GEORGE and S. W. CAR- MACK for the State.

HOLMAN & HOLMAN, LAMB & TILLMAN and TAY- LOR & SOLOMON for Wilson.

COOPER, J., delivered the opinion of the court.

The town of Fayetteville was incorporated by an act of the Legislature in 1819.   Prior to the month of April, 1881, it was provided by the original charter, and subsequent acts amendatory thereof, that the sheriff

of the county, on the Saturday before the first Monday in January each year, should hold an election for the purpose of electing seven persons as aldermen of the corporation for one year. All persons residing in the town, who were qualified to vote for members of the General Assembly, were authorized to vote at said election. The aldermen elected were empowered to choose one of their own number as mayor. It was further provided that if, for any cause, the election should not be held on the day designated, the sheriff, upon giving fifteen days' previous notice, might hold the election on any other day. By virtue of these acts, a board of aldermen was elected on Saturday before the first Monday in January, 1881, and qualified according to law. On April 4, 1881, the Legislature passed an act entitled: "An act to amend the charter of the corporation of Fayetteville, and to change the time for holding the election for aldermen of said corporation." By this act the charter of the town was so amended that the election of aldermen was required to be held on the Saturday before the first Monday in October in each year, and it was provided: "That the next election shall be held on the Saturday before the first Monday in October, 1882, and that the present board of aldermen shall hold their offices until their successors are elected and qualified under the act." The board did hold over, and another board of aldermen was elected at an election held at the time designated by the act, and qualified accordingly. On March 22, 1883, the Legislature passed another act entitled: "An act to amend the charter of the corporation of Fayette-

ville, and an act passed on the 4th day of April, 1881, amending said charter." By this act the charter of the town was amended as follows: "That the aldermen elected by the qualified voters of said corporation shall serve for a term of two years, and that the next election for aldermen shall be held on the Saturday before the first Monday in October, 1884, and that the present board of aldermen shall hold their offices until their successors are elected and qualified."

Because of the provisions of this last act, the sheriff failed and. refused to hold an election for aldermen on the Saturday before the first Monday in October, 1883. Afterwards, on October 11, 1883, a justice of the peace of the county residing within the corporate limits of. the town of Fayetteville, after five days' notice, proceeded to hold an election for seven aldermen, at which seven of the relators received the highest number of votes cast, and were declared elected by the justice. The defendants, claiming as aldermen under the election in October, 1882, refused to surrender to the relators. Thereupon, this bill. was filed, under the provisions of the Code, sec. 3409 *et seq.*, to test the title of the defendants to the offices, and to have the relators inducted as the rightful aldermen. The chancellor decided in favor of the relators, and the defendants .appealed.

The election under which the relators claim was not held by virtue of any provision in the charter of the town of Fayetteville. The charter, as we have seen, provides that if, for any cause, the election for aldermen be not held on the day designated, the

sheriff, upon giving fifteen days' previous notice, may hold an election on any other day. The election under which the relators claim was held by a justice of the peace upon five days' notice. The Code, section 1378, is relied on as authorizing the election. The chapter of the Code in which this section is found treats of municipal corporations, and consists mainly of the provisions of a general law for the organization of municipal corporations. It contains also some provisions applicable to municipal corporations generally. The article in which the section is found includes fourteen sections, and treats of the election of officers. All of these sections down to section 1378, which is the last, apply exclusively to the election of officers of the particular corporations authorized to be organized under the Code. The section in question is thus worded: "The franchises of such corporations (meaning the corporations so organized), shall not be forfeited or discontinued by a failure to hold the election at the proper time; but the officer or other person authorized in such or any incorporated town, or, on their failure, any justice of the peace therein, may at any time, on giving the inhabitants at least five days' notice thereof by advertisement in some newspaper or printed notices at four or five public places in the corporation, hold such election." The object of this provision was to prevent a possible forfeiture of franchises by the failure to hold the election at the designated time. The use of the word "such" in connection with the corporations whose franchises were to be protected, and in connection with the election provided for is persuasive

State *v.* Wilson.

that the entire section was intended exclusively for the benefit of the particular corporations. The reasonable construction, in this view, is that the right to hold the election is entrusted to the officer or other person authorized in the particular, or in any incorporated town, and not that the provision was intended to apply to any incorporated town. But even a general law would not repeal the particular provisions of a special charter unless plainly so intended: *Mayor* v. *Dearmon*, 2 Sneed, 104, 120; *State* v. *Branin*, 23 N. J., 484. And a general law merely permissive would not apply to a corporation whose charter clearly provided for the contingency in a different and incompatible mode. The charter of Fayetteville does expressly provide, if the election be not held on the day designated, that the sheriff, upon giving fifteen days' previous notice, hold the election on any other day. The section of the Code allows an election upon five days' notice on the occurrence of the same contingency. The two provisions cannot stand together as part of the same charter, and the special grant of the charter must necessarily prevail over a permissive provision not intended to repeal the grant. The remedy of the corporators if the sheriff refuses to act is to compel him to do his duty by a writ of *mandamus*. The relators have, therefore, no right to the offices claimed.

The relators, as citizens and tax-payers of the town, are however entitled to contest in the mode adopted the right of the defendants to the offices in controversy. Four of the defendants were in office when the act of 1881 was passed, and all of them claim

under the election held in conformity with that act, one of them having been regularly chosen by his fellows to supply a vacancy occasioned by the resignation of a member who was ·then elected. The better ·opinion, as well as the weight of authority, now is that although the officers of a corporation be required by the charter to be annually elected, yet if the time of election under the charter be allowed˙ to pass, the old officers continue in office after the year, and until others are elected: *Lynch* v. *Lafland,* 4 Cold., 96; *Nashville Bank* v. *Petway,* 3 Hum., 522; *Prowse* v. *Foot,* 3 Br. P. C., 167; *Elmendorf* v. *Ewen,* 2 N. Y. Obs., 85; *Elmendorf* v. *Mayor, etc.,* 25 Wend., 693; 2 Kent Com., 238; A. & A. on Corp., 108. For a municipal corporation cannot be deemed to be in a state of intermitted existence, and one board goes out only when another comes in, at any rate where the intermission is only for a reasonable time, and reasonably explained. And if the charter, like the charter of Fayetteville, expressly provides for a subsequent election if for any˙ reason the proper day be allowed to pass, the necessary construction would be that the old officers continue in existence until the new officers are elected and qualified. For such would seem to be the plain legislative intent. A majority of the defendants are rightfully in office even if we go behind the legislation complained of, and all of them are ·clearly so under the election in 1882, for the sheriff had the right to hold that election under the charter after the regular day had passed.

The acts of 1881, ch. 87, and 1883, ch. 110, above

State v. Wilson.

quoted and in controversy are not in conflict with the Constitution of 1870, Art., 2, sec. 17: "No bill shall become a law which contains more than one subject, that subject to be expressed in the title." For each act contains only one subject which is expressed in the title. The subject of the first act is to amend the charter of Fayetteville by changing the time for holding the election of aldermen, and this subject is expressed in the title. The subject of the second act is to amend the charter, and the amendatory act, and this is also expressed in the title. The generality of the title, all the cases agree, is no objection. The title need only express the general object without specifying the details: Cooley Const. Lim., 143; *Wilson v. Benton*, 11 Lea, 56. To change the time of holding a municipal election, and the term of the officers under it would, of course, be within the legislative competency, the power of the Legislature over municipal corporations being unlimited, and the provision continuing the existing board in office until the election could be held at the time designated was, as we have seen, not so much the enactment of a positive provision, as the enunciation of the legal consequence of the act itself: *Luehrman v. Taxing District*, 2 Lea, 425, 430. A provisional continuance of existing officers in office until a new order of affairs is inaugurated, has been uniformly held to be within the competency of the Legislature: *Id.*, 440; *Daniel v. Mayor, etc.*, 11 Hum., 582; *People v. Hurlburt*, 24 Mich., 44; *Christy v. Supervisors*, 39 Cal., 3. And at most it was an incident to the purpose of the bill,.

State *v.* Wilson.

and germane to its object: *State* v. *McConnell,* 3 Lea, 332; *State* v. *Whitworth,* 8 Lea, 594. Moreover, even if the act were void in so far as it undertook to extend the term of the existing officers, because the extension of the term of existing officers is not within the competency of the · Legislature, it would not affect the validity of the· act in other respects, which are ·clearly severable: *Tillman* v. *Cooke,* 9 Baxt., 429.

Another objection is made to the acts of 1881 and 1883 that they violate the Constitution of 1870, Art. XI., sec. 8: "The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals rights, privileges, immunities or exemptions other than such as may be, by the same law, extended to any member of the community who may be able to bring himself within the provisions of such law. No corporation shall be created, or its powers increased or diminished by special laws; but the General Assembly shall provide by general laws for the organization of all corporations hereafter created, which laws may at any time be altered or repealed; and no such alteration or repeal shall interfere with or divest rights which have become vested." The argument is that the acts under consideration are special, intended to benefit particular individuals, or to affect a single corporation, and consequently that they fall within the prohibitions quoted.

It is alleged in the bill that the legislation in

question was procured by an official of the town of Fayetteville for his personal benefit. But there is no proof to sustain the charge even if such proof were admissible. We must presume that the action of the Legislature was dictated by motives of public policy, and there is nothing in the acts themselves indicating the contrary.

The acts are special, being confined in their operation to the municipal corporation of the town of Fayetteville, and it is contended that such legislation violates the provision of the Constitution above quoted. The prohibition of that section of the Constitution is against the creation, or the increase or diminution of the powers of a corporation by special laws. If the acts under consideration fall within the prohibition, it is because they increase or diminish the "powers" of the corporation. The "powers" inhibited are the "rights, privileges, immunities or exemptions" conferred upon the corporators. Special legislation in reference to particular corporations is not entirely forbidden. The Legislature could probably by special law change the name of a corporation, or the day of holding a corporate election; or increase or diminish the territory of a municipal corporation, or modify some detail of its organization. For these are mere incidents to the exercise of "powers," not the "powers" themselves which are required to be conferred by general laws.

But we think the true answer to the argument made is that the constitutional prohibition applies exclusively to private, not to public or municipal corporations. The first clause of the section quoted from

the Constitution of 1870 was also contained in the
Constitution of 1834, and was followed by these words:
"Provided always, the Legislature shall have powers
to grant such charters of incorporation as they may
deem expedient for the public good." This proviso
was left out of the Constitution of 1870, and its place
supplied by the second clause of the section quoted:
"No corporation shall be created, or its powers in-
creased or diminished by special laws," etc. "The
power to grant charters of incorporation," says Nich-
olson, C. J., "is forbidden by the body of the Con-
stitution of 1834, Art. XI, sec. 7, but conferred by
the proviso": *City of Memphis* v. *Memphis Water Works*,
5 Heis., 495, 530. The language was used by the
Chief Justice in a case involving the rights of a pri-
vate corporation, and was correct as to such corpo-
rations, in the sense of granting charters to individuals
by special laws. For the charters of private corpo-
rations consist of "rights, privileges, immunities or
exemptions," which the first clause of the section of
both constitutions provides shall not be granted to any
individual or individuals by law, not extended by the
same law to any members of the community who might
be able to bring himself within its provisions. In
view of these provisions, the power to grant special
charters of incorporation to particular individuals for
private purposes was prohibited. But the remark was
not correct in reference to the power of the Legisla-
ture to grant charters of municipal incorporations.
For nothing in the first clause of the section of the
constitution under consideration would have affected the

inherent legislative power to create municipal corpo-
rations intended to subserve the public interests, and
not for the benefit of individuals. Such corporations
are mere arms or instrumentalities of the government,
created exclusively for public purposes, subject to the
unlimited control of the Legislature by amendment,
alteration or revocation, and confer no vested rights.
*Luehrman* v. *Taxing District*, 2 Lea, 425, 433. "A
municipal corporation," says Mr. Justice Hunt, "in
the exercise of all its duties, including those most
strictly local or internal, is but a department of the
State. The Legislature may give it all the powers
such a being is capable of receiving, making it a
miniature state within its locality. Again, it may
strip it of every power, leaving it a corporation in
name only; and it may create and recreate these
changes as often as it chooses, or it may itself ex-
ercise directly within the locality any or all of the
powers usually committed to a municipality. We do
not regard its acts as sometimes those of an agency
of the State, and at others those of a municipality;
but that, its character and nature remaining at all
times the same, it is great or small according as the
Legislature shall extend or contract the sphere of its
action.": *Barnes* v. *District of Columbia*, 91 U. S., 540,
544. And this court has repeatedly said that the
Legislature has the power to create municipal corpo-
rations independently of any constitutional grant: *Hope*
v. *Deaderick*, 8 Hum., 1; *Nichol* v. *Mayor*, etc., 9
Hum., 252; *Trigally* v. *Mayor*, etc., 4 Cold., 382.

The Constitution of 1870 does not contain the ex-

17—VOL. 12

press grant of power to the Legislature to create corporations conferred by the proviso of the Constitution of 1834 quoted above. The proviso is supplied by the clause: "No corporation shall be created, or its powers increased or diminished by special laws, but the General Assembly shall provide by general laws for the organization of all corporations hereafter created, which laws may at any time be altered or repealed; and no such alteration or repeal shall interfere with, or divest rights which have become vested." This language plainly implies that the inherent power of the Legislature to create corporations, and of course to alter or repeal the charters of incorporation, remains in full force except in so far as it may be affected by the particular provisions of the section. The limitations upon the powers are that the "rights, privileges, immunities or exemptions" of a corporation shall not be conferred upon particular individuals, but shall be so granted by law as to be open to any member of the community who may be able to bring himself within the law, and that the law itself shall be subject to alteration or repeal so as not to interfere with vested rights. But these limitations manifestly relate exclusively to private corporations. For franchises conferred merely for the public benefit cannot be said to be granted to individuals, and were always subject to alteration or repeal, and never created vested rights. The provisions were utterly unnecessary and inapplicable in the case of municipal corporations, and were intended for private corporations.

It is true the word corporation is generic, and

would ordinarily include both public and private cor-
porations.   It is also true, as said in the Luehrman
case, that the weight of authority seems to be in
favor of taking the word in its broad sense in the
construction of constitutions as well as statutes where
there is nothing in the context to control the mean-
ing.   But the first clause of the section of the Con-
stitution under consideration so clearly relates only to
the conferring of rights, etc., upon individuals, and
the limitations of the second clause are so manifestly
directed to the same object, the scope and purpose of
the entire section having no possible bearing upon
municipal corporations, that we think the word should
be restricted to that class of corporations which seems
to have been alone contemplated by the provisions.
The great diversity of municipal corporations required
to meet the wants of local communities seems to
demand a larger liberty of legislation than private
corporations.   The public exigency may demand spe-
cial legislation for one community not proper for any
other.   And the General Assembly has, undoubtedly,
in numerous instances since the adoption of the Con-
stitution of 1870, acted upon this construction of the
legislative power.   The Constitution itself, by Art.
VI., sec. 1, in providing how the judicial power of
the State shall be vested, expressly authorizes the
Legislature to "vest such jurisdiction in corporation
courts as may be deemed necessary." And the juris-
diction of such courts must, it need scarcely be said,
vary with the population, extent of territory and lo-
cality of the municipality.   And the same may be

said of the taxing powers which the Legislature is authorized by the Constitution, Art. 2, sec. 29, to confer upon incorporated towns.

There is a result of the limitation of legislation in the creation of corporations, and the increase or diminution of their powers by general laws only, which would follow such legislation in regard to public as well as private corporations. And that is that the sessions of the Legislature would be less occupied in the consideration of merely local bills. But this is a mere incident, and not the object of the constitutional provision under consideration. It is probable, however, that this incidental benefit may have influenced the action of the Constitutional Convention, which is referred to in the *Luehrman Case*, 2 Lea, 431, in voting down a motion to limit the particular section to private corporations. Whatever may have been the motive of this action, we are constrained to hold that the section itself, as adopted by the people, only applies to private corporations.

The provisions of the section were intended to control legislation in reference to corporations in existence at the adoption of the Constitution of 1870, as well as to corporations created subsequently. The language is: "No corporation shall be created, or its powers increased or diminished by special laws." The plain meaning, in accord with the grammatical construction, is that no corporation shall be created, and no corporation shall have its powers increased or diminished by special laws. It was never intended that there should be a favored class of corporations whose

powers might be increased by special laws merely be-
cause they happened to be in existence when the
Constitution went into effect. The object of the pro-
vision was to place all corporations on a level as to
rights, privileges, immunities, exemptions or powers
afterwards conferred. The power of the Legislature
over corporations in other respects, as we have seen,
is not affected.

The decree below will be reversed, and the bill
dismissed with costs.

FREEMAN, J., delivered the following dissenting opinion:

Judge Turney and myself dissent from the view of
the majority of the court in this case, on the ques-
tion of construction of the Constitution of 1870, Article
II, section 8, holding it has no application to munic-
ipal corporations.

Such has not been the opinion either of the Legis-
lature, of the bar, or this court from the adoption of
the Constitution down to the announcement of the
present opinion. That the language of this section did
apply to municipal corporations is conceded by Judge
Cooper in the celebrated case of *Luehrman* v. *The Tax-
ing District*, 2 Lea, 431. He says: "If the question were
a new one I would be inclined to hold that the sec-
tion of the Constitution was intended only as a re-
striction upon the legislative powers over private cor-
porations. The weight of judicial authority has been,
however, to treat words in a constitution relating to
corporations generally, such as "corporate powers, body-
politic or corporate, and charters of incorporation," as

applying equally to public and private corporations," for ,this he cites *Purdy* v. *People*, 4 Hill, 384; 15 Ohio St. Rep., 21; 20 Ohio St., 18; 4 Kansas, 124, and *Mayor of Morristown* v. *Shelton*, 1 Head, 24.

These authorities, no doubt, sustain the principle stated, and in fact we assume no authority can be found holding to the contrary. That municipal charters are acts of incorporation, with grants of power conferred by the Legislature was never doubted and never could be, while language is to be understood in its plain and obvious meaning.

The question in this case is not whether the section does not also refer to and regulate the organization of private corporations. That is conceded, but whether it excludes from its operation the regulation of municipal or public corporations? It is: "*No* corporation shall be created, or its powers increased or diminished by special laws; but the General Assembly shall provide by general laws for the organization of all corporations hereafter created, which laws may, at any time, be altered or repealed, and no such alteration or repeal shall interfere with or divest rights which have become vested."

This, it is true, is preceded by the provision of the Constitution of 1834. The Legislature shall have no power to suspend any general law for the benefit of any particular individual," etc. But we are unable to see how this prohibition has any influence to control the obvious meaning of the balance of the sentence we have quoted.

The language is as broad, clear and comprehensive

as words can make it. The mischief intended to be remedied, is thus stated in the case of *Mayor and Aldermen of Morristown* v. *Shelton*, 1 Head, 26, in discussing the act of 1849, authorizing the county courts to organize such corporations. Judge Caruthers says: "The object of the Legislature was to save the great waste of time and money consumed in the making and printing separate acts of incorporation of the thousand towns and villages that might and would spring up in this growing and prosperous State, and we may suppose that the importance, so far as practicable, of producing uniformity in the municipal powers and privileges of the citizens and corporate authorities of all the towns had its influence upon them. This would certainly be desirable, and is a strong consideration in favor of the policy of the act."

To attain these ends, and prevent the Legislature being burdened with this mass of local legislation, the Convention of 1870, deemed it important to prohibit the creation of any corporation or the increase or diminution of the powers of any corporation by special laws, but that general laws should be passed by the Legislature for this purpose, for the organization of all the various corporations the Legislature deemed desirable should exist.

To effectuate this purpose the Convention has put the prohibition in terms admitting of no doubt: "*No corporation shall be created or its powers increased or diminished by special laws.*" Is a municipal charter a corporation? if so, the Legislature cannot create such a body by a special law. That is forbidden, nor can

it increase or diminish the powers of such a body by such laws. How it may be done is then affirmatively provided: " But the Legislature may, that is, *is* authorized to do what is prohibited by the words quoted, not by special laws, or a law passed for each case, but by *general* laws, for the organization of *all* corporations hereafter created."

If this is not a distinct prohibition forbidding the creation, or increase or diminution of powers of all corporations by special laws, such a prohibition cannot be expressed in the English language. If the precise mode is not prescribed in which it may be done, expressed with equal clearness, is found in the next clause, we are unable to understand the force of the words used.

But this language is attempted to be limited by the words following giving the power to alter or repeal all such laws, and adding, " no such alteration or repeal shall interfere with or divest rights which have become vested."

But this is neither necessary or fair implication from the language of the section. It is conceded it did apply to private corporations in which individual rights might become vested, because it includes *all* corporations; therefore, this limitation finds ample operation, but on what principle of construction it shall be held to exclude municipal corporations from the language that clearly includes it, we are unable to see. Its plain meaning is, that all corporations are to be created by general laws, and their powers only to be increased or diminished by such laws, and the Legis-

lature is forbidden to do these things in any other way. But in reserving the right to alter or repeal the charters thus granted, it was seen there might and would be private corporations whose rights would be vested that should be protected from invasion or injury by such repeal, and so it was provided.

It is laid down by Judge Cooley (Const. Lim., 79, 80), that where the inquiry, in construing a constitution, is directed to ascertaining the mischief designed to be remedied, or the purpose to be accomplished by a particular provision, it may be proper to examine the proceedings of the convention which framed the instrument. We add, the previous legislative. and judicial history of the question may well serve to throw light upon this purpose.

We have seen from the case in 1 Head what the mischief was. We look to the proceedings of the Convention and we find a motion was made and urged to amend this clause, so as to make it apply only to private corporations and exclude municipal corporations from the prohibition, and this amendment was rejected.

Now, in view of the fact that the Convention must be assumed to have known what they were doing, and the other fact, that the language used admits of no other construction in its plain and obvious meaning, we cannot doubt that the object was to apply prohibition to all corporations, as it says. If any other purpose had been intended, it was only necessary to add the word private corporation, and that one word would have saved all possibility of misunderstanding what was meant. But when we find an intelligent

body of men voting to exclude the very limitation on their language now placed by construction on it, we can but feel there is some mistake somewhere. In fact, we can but know, we are saying they have done precisely what by a large majority they refused to do, and that upon a construction of the language used, which to say the least of it, is strained and far from the plain and obvious meaning of the words used.

The only real doubt ever presented in the construction of this clause of the Constitution was whether in reference to increase or diminution of powers it applied to corporations already in existence. It is true, Judge Cooper suggests, if it had been a new question he would have thought differently on the point now under discussion in the Luehrman case, but frankly concedes the authorities to be against the views suggested.

For these and other reasons that might be given, we very earnestly dissent from the conclusion indicated. We think that conclusion has inevitably nullified what is a very plain and unambiguous clause of the organic law.