IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 15, 2000 Session

## JOHN MORGAN, ETC. v. CHEROKEE CHILDREN & FAMILY SERVICES, INC.

**Appeal from the Chancery Court for Davidson County**
**No. 00-2419-II     Carol L. McCoy, Chancellor**

---

**No. M2000-02382-COA-R3-CV - Filed March 15, 2001**

---

The State Comptroller sued Cherokee Children & Family Services, Inc. seeking access to Cherokee's records for an audit of the company's affairs. The Chancery Court of Davidson County held that the company's contract with the State, and Chapter 960 of the Public Acts of 2000, gave the State the right to conduct the audit. Based on our opinion in *Memphis Publishing Company, et al. v. Cherokee Children & Family Services, et al.*, released simultaneously with this opinion, we hold that the company's contracts with the State do not make all their records public records. We also hold that to apply Chapter 960 retroactively would violate the constitutional prohibition against retrospective legislation. We therefore reverse the lower court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Allan J. Wade, Lang Wiseman, and Lori Hackleman Patterson, Memphis, Tennessee, for the appellant, Cherokee Children & Family Services, Inc.

Paul J. Summers, Attorney General & Reporter; Albert L. Partee, III, Senior Counsel, for the appellee, John Morgan, in his official capacity as Comptroller of the Treasury of the State of Tennessee.

## OPINION

### I.

Alleging that Chapter 960 of the Public Acts of 2000, a 1992 contract, and a January 1, 2000 contract with the State gave the State access to <u>all</u> the company's books and records, the State

Comptroller brought this action seeking a mandatory injunction requiring the company to submit to an audit. Cherokee answered and admitted that the State had the right under the contracts in question to audit its books and records insofar as they relate to work performed or money received under the contracts. The company resisted any greater intrusion into its affairs, and alleged that Chapter 960 violated various state and federal constitutional provisions.

The chancellor held that Chapter 960 provided the Comptroller a summary remedy, and ordered Cherokee to provide immediate access to all of its records for audit.

## II.
### THE CONTRACTS

In the companion case of *Memphis Publishing Co., et al. v. Cherokee Children & Family Services, et al.*, No. M2000-01705-COA-R3-CV (Tenn. Ct. App. Mar. 15, 2001), we held that a proper interpretation of the 1992 and 2000 contracts made the documentation, books, and records of Cherokee public records, "insofar as they relate to work performed or money received under the contracts." The Comptroller is entitled to access to the same records for audit purposes.

## III.
### CHAPTER 960, PUBLIC ACTS OF 2000

On June 21, 2000, the Governor signed House Bill 3360, an amendment to Title 8, Chapter 4 of the Tennessee Code. The bill, which became Public Chapter 960, recited that the General Assembly wished to clarify the Comptroller's audit powers in the face of some opposition from certain contractors doing business with the state. The major sections of the Act are as follows:

SECTION 1. (a) Entities contracting with the state or local governments to perform government services shall be subject to audit by the Comptroller of the Treasury to assure that public funds are expended in accordance with the public purpose for which they were contracted.

SECTION 1. (b) Notwithstanding any other provision of law or existing contract, the Comptroller of the Treasury is hereby authorized to conduct an audit of the records of any entity contracting with the State of Tennessee or local government entities created under and by virtue of the statutes of the State of Tennessee, if such contracting entity derives fifty percent (50%) or more of its gross revenue from such state or local entity or entities. All books, records, documents, and other evidence pertaining to the receipt, accounting for, use and/or expenditure of any public funds by any such contracting entity shall be available for examination by the Comptroller of the Treasury during normal business hours through on-site review. In the alternative, and in the Comptroller's sole discretion, such records may be provided through the mail or other methods of data transmission. Such audits shall take place as often as necessary, and to the extent necessary, in the discretion of the Comptroller

of the Treasury and in conformance with generally accepted auditing standards, to determine whether public funds received by the entity were properly accounted for and expended in accordance with the public purpose for which the entity was contracted. The Comptroller of the Treasury shall have such authority notwithstanding whether the contract is in the form of a fee-for-service contract, a vendor contract, a cost reimbursement contract, any combination of these types of contract, or any other form of contract.

SECTION 2. The provisions of this act are declared to be remedial in nature and to that end shall apply to all contracts in force when this act takes effect.

The provisions of this act shall be retroactive to January 1, 1992.

Looking beyond any ambiguities in the Act and interpreting it as the State insists it should be interpreted, the Act applies to every entity that receives (or has received since 1992) fifty percent of its gross revenue through contracts with state or local governments, and makes those entities subject to audit by the Comptroller. As we have noted, Cherokee's contracts already give the Comptroller a right to audit Cherokee's records "insofar as they pertain to work performed or money received under the contract." But, the State insists, Chapter 960 would extend the State's power to audit all of the company's internal operations.

Article 1, Section 20 of the Tennessee Constitution says "that no retrospective law, or law impairing the obligation of contracts, shall be made." That section and its predecessor sections have long been interpreted to mean that the Legislature may enact laws that have a retrospective application only so long as they do not impair the obligations of contracts or impair vested rights. *See Wynne's Lessee, et al. v. Wynne*, 32 Tenn. 404 (1852); *Hamilton Co. v. Gerlach*, 140 S.W.2d 1084 (Tenn. 1940). The court in *Wynne's Lessee* gave several examples of laws that do not violate Article 1, Section 20:

And hence the Legislature may make laws for the extenuation or mitigation of offences; for repealing former laws; for the enforcement of contracts already made; or to make a paper, authenticated according to its directions, evidence, though not evidence before; laws affecting the authentication and solemnities of contracts; laws giving further time for the registration of deeds; laws validating deeds, and the defective probate of deeds; laws providing for the payment of the officers and agents of the state for services already performed; laws providing new and additional remedies for a just right already in being; laws modifying or changing remedies, and all other strictly remedial laws.

32 Tenn. at 410.

Many of the examples cites in *Wynne's Lessee* come under the heading of remedial or procedural statutes, which may operate retrospectively. *Nutt v. Champion Int'l. Corp.*, 980 S.W.2d

365 (Tenn. 1998).  A procedural statute defines the manner by which a party may enforce a legal right.  *Doe v. Sundquist*, 2 S.W.3d 919 (Tenn. 1999).  A remedial statute "provides the means by which a cause of action may be effectuated, wrongs addressed, and relief obtained." *Id.* at 923.  <u>But if the statute creates a new right of recovery it cannot be applied retrospectively</u>.  *Shell v. State*, 893 S.W.2d 416, 420 (Tenn. 1995).

A corporation organized and incorporated under the general laws of a state creates a contract between the state and the corporation.  *Trustees of Dartmouth College v. Woodward*, 17 U.S. 518 (1819).  This contractual relationship is protected by the Constitution against impairment by subsequent legislation - - subject to the ability of the state to exercise its police powers or to protect the public welfare.  *See* 18 Am. Jur. 2d *Corporations* § 78; *Knoxville Iron Co. v. Harbison*, 183 U.S. 13 (1901).  Our Constitution prohibits the increase or decrease of corporate powers by special laws.  Article 11, Section 8; *see also State v. Wilson*, 80 Tenn. 246 (1883).

The general law of the state requires a nonprofit corporation to maintain certain corporate records, Tenn. Code Ann. § 48-66-101(a), and to make a portion of these records available for inspection by the corporate members, Tenn. Code Ann. § 48-66-102.  The corporation must file an annual report with the Secretary of State, Tenn. Code Ann. § 48-66-203.  But the general law does not give the State the routine right to audit a corporation's records.  Therefore, Chapter 960 definitely gives the state a new right it did not have before – and it makes that right apply to any corporation that derived more than 50% of its revenue from contracts with state and local governments dating back to 1992.  We are of the opinion that the Constitution prohibits the retrospective application of this Act.

We do not take any position on the prospective application of the Act or on the other constitutional challenges raised by Cherokee.  Nor do we take any position on the question of the Comptroller's power to inspect Cherokee's books and records in furtherance of an inquiry into the corporation's tax exempt status or any abuse of its corporate powers.  The complaint in this case, however, does not contain any allegations of wrongdoing on Cherokee's part.  If the investigation of wrongdoing is the object of this exercise, the State should say so directly and take advantage of its ample powers to oversee the activities of entities holding state franchises.

The judgment of the trial court is reversed and the cause is remanded to the Chancery Court of Davidson County for any further proceedings necessary.  Tax the costs on appeal to the State of Tennessee.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.